**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:22-cv-02327-NYW-STV

MARY ANN MORENO,

        Plaintiff,

v.

CIRCLE K STORES, INC.,

        Defendants.

---

**CIRCLE K'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant Circle K Stores, Inc. moves under Federal Rule of Civil Procedure 56 and D.C.COLO.LCivR 56.1 for summary judgment on all of Plaintiff Mary Ann Moreno's claims and her prayer for punitive damages.

## I. INTRODUCTION

Circle K operates convenience stores. For the safety of its customers and its employees, Circle K has a policy that instructs its employees not to confront, follow, pursue, track, chase, or fight shoplifters. Or, as Moreno put it, "you give them whatever they want." Plainly, failure to follow the policy increases the risk to employees and other customers that a dangerous situation will become violent, harmful, or worse, and Circle K's Confront & Chase policy provides that failure to follow the policy will result in immediate termination.

Moreno lost her job at Circle K because she violated the Confront & Chase policy when she pushed a robber and otherwise engaged and confronted him. Now she claims wrongful

termination in violation of public policy and intentional infliction of emotional distress ("IIED")/outrageous conduct as a result of her termination. Circle K is entitled to summary judgment because neither the law nor the undisputed material facts support her claims.

**First**, Moreno's self-defense theory of wrongful termination is not recognized under Colorado law, as Judge Arguello held in *Donez v. Leprino Foods, Inc.*, No. 19-cv-00285-CMA-NRN, 2020 WL 1914958, at *6-7 (D. Colo. Apr. 20, 2020). The plaintiff in that case attempted to expand the recognized sources of public policy based on the exact same constitutional provisions and statutes as Moreno, and the court granted summary judgment on the wrongful-discharge claim. The same result is dispositive in this case—not to mention that the video evidence before the Court plainly shows Moreno was ***not*** acting in self-defense and the decisionmakers honestly believed she was not acting in self-defense. Likewise, there is ***no evidence*** that Moreno was terminated because she was the victim of a crime or because she reported the crime, and so her victims'-rights theory fails too.

**Second**, the bar for an IIED claim is extremely high. Caselaw is clear that termination of employment is not outrageous conduct, nor even is wrongful termination in violation of an employer's policies. Actionable conduct must be more than unreasonable, unkind, or unfair. It must truly offend community notions of acceptable conduct and that is not the case here. Moreno also lacks evidence that Circle K recklessly or intentionally caused her severe emotional distress.

Summary judgment is therefore appropriate on each of Moreno's claims and on her request for punitive damages.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

**A.    Moreno's employment with Circle K.**

1.      Circle K operates a chain of convenience stores throughout the United States and internationally. Ex. A, Decl. of Craig Holmes ("Holmes Decl.") ¶ 3.

2.      Moreno began her employment with Circle K in October 2018, after her previous employer, CST Brands, was acquired by Circle K. Holmes Decl. ¶ 8.

3.      In light of her tenure with acquired companies, Circle K considered October 29, 2004, to be Moreno's date of continuous service. Ex. B, Decl. of Nicholas Hankins ("Hankins Decl.") ¶ 9 & Ex. 8 ("30(b)(6) Dep.") 99:10-100:4.

4.      Moreno's employment with Circle K was at will. Holmes Decl. ¶ 9.

**B.    Circle K's policies.**

5.      Circle K had a Confront & Chase policy applicable to Moreno during her employment. 30(b)(6) Dep 20:2-7; Hankins Decl. ¶ 10 & Ex. 9 ("Moreno Dep.") 50:4-51:11; Hankins Decl. ¶ 5 & Ex. 3 (policy); Holmes Decl. ¶ 6.

6.      Circle K's Confront & Chase policy says:

> Do not confront follow, pursue, track, chase, fight or follow [inside and/or outside] any person[s] suspected of shoplifting products and/or cash from the site, beer runs or any other confrontational situation.
> . . .
> At no time do you stop, question or accuse a person(s) of theft.
> . . .
> ***This policy is for your protection and for the safety of everyone!***
> . . .
> **FAILURE TO FOLLOW THE "DON'T CHASE or CONFRONT POLICY" WILL RESULT IN IMMEDIATE TERMINATION.**

---

[1] The following paragraphs are cited later in this motion as "SUMF ¶ __."

Hankins Decl. Ex. 3 (brackets and emphasis in original).

7.      The Confront & Chase policy instructs employees to call 9-1-1 immediately in the event of a theft. *Id.*

8.      The Confront & Chase policy has been in place for at least 20 years, through various company leadership. 30(b)(6) Dep. 21:11-22:8.

9.      The Confront & Chase policy was developed for the safety of Circle K's employees and customers; Circle K wants people to be cooperative and safe. 30(b)(6) Dep. at 22:9-18.

10.     Circle K's Performance Coaching policy provides that employees may be fired upon a first offense of certain serious policy violations or employee misconduct, including fighting, chasing, confrontation, or pursuit. Holmes Decl. ¶ 4; Hankins Decl. ¶ 3 & Ex. 1 (Circle K Employee Guidebook) 13.

11.     Circle K's Workplace Security policy provides that if any employee ever witnesses a shoplifting or robbery occur, the employee shall not chase or attempt to apprehend the suspect. Hankins Decl. Ex. 1 (Circle K Employee Guidebook) 16.

12.     Circle K's Robbery Prevention policy provides that in the event of a robbery, employees must cooperate with the robber's demands and must not resist or try to fight. *Id.* at 17.

13.     Circle K's Robbery Prevention policy provides that the first priority is the safety of everyone in the store, and during a robbery employees should not "fight, chase, confront or pursue the suspect." *Id.* at 17-18.

14.     Circle K's Disorderly Conduct / Insubordination / Verbal Abuse / Fighting policy provides, "Fighting or any physical action by one employee against another employee or non-

employees such as customers . . . on Company premises will not be tolerated. Such behavior is grounds for disciplinary action up to and including termination." *Id.* at 20.

15.     Circle K's Visitor and Vendor policy provides that non-customer such as family members are only allowed on company premises for the purpose of conducting business with Circle K. *Id.* at 32.

16.     Circle K's 5-Minute Rule provides that "[a]ll injuries, no matter how small, must be reported immediately to the Store Manager. In the event of a serious injury, robbery, fire, etc., call 9-1-1 and then the Store Manager." Holmes Decl. ¶ 5; Hankins Decl. ¶ 4 & Ex. 2 (5-Minute Rule).

17.     Circle K's 5-Minute Rule also provides a notification procedure for employees to report all emergency, safety, and/or security incidents that occur at the store within five minutes of the situation. *Id.*

**C.     Moreno was aware of Circle K's policies.**

18.     Moreno agrees that Circle K has policies in place for the safety of its employees and customers. Moreno Dep. 42:3-7

19.     Moreno knew during her 16 years of employment that it was Circle K's policy that employees were prohibited from confronting a robber. Moreno Dep. 42:8-19; 49:1-16.

20.     Moreno was aware during her employment that it was Circle K's policy that employees do not stop shoplifting. *Id.*

21.     Moreno was aware during her employment that she could face immediate termination if she violated policy about "what not to do during a robbery or shoplifting." *Id.* at 44:10-18.

22.     Moreno understands that Circle K's policy about what not to do during a robbery includes that, "You do what they ask, "you give them whatever they want," "You don't resist," "You do as they ask you," and you do not resist, fight, confront, chase, or attempt to apprehend the robber. *Id.* at 45:13-46:14.

23.     Moreno was familiar with the policies and information in Circle K's Employee Guidebook. *Id.* at 43:21-23; 49:1-16.

24.     Moreno was aware of the Circle K's 5-Minute Rule. *Id.* at 47:14-48:5.

**D.     October 4, 2020 robbery.**

25.     Moreno was employed by Circle K on October 4, 2020. Scheduling Order [Dkt. 26] § 4 (undisputed facts).

26.     On October 4, 2020, Moreno was working at a Circle K store located at 9489 Sheridan Boulevard in Westminster, Colorado. *Id.*

27.     On October 4, 2020, an individual later identified as Tyler Darren Wimmer committed a robbery at the Circle K store on Sheridan Boulevard while Moreno was working. Moreno Dep. 60:10-24.

28.     Wimmer entered the store carrying various items, including two knives. Hankins Decl. ¶ 6 & Exs. 4, 5, 6 (surveillance videos) at 6:54:40; Moreno Dep. 63:9-23, 66:1-21 (testifying video is accurate); Moreno Dep. 66:22-67:15.[2]

29.     Shortly after he arrived, Wimmer waited in line behind other customers. Hankins Decl. Exs. 4-6 at 6:54:34-6:56:25; Moreno Dep. 68:2-69:18.

---

[2] Hankins Declaration Exhibits 4-6 depict the events from multiple angles. Only Exhibit 6 has audio. Hankins Decl. ¶ 7.

30.     When Wimmer got to the front of the line, he asked for a pack of cigarettes. *Id.*

31.     After Moreno retrieved the cigarettes, Wimmer asked to have them for free. *Id.*

32.     Moreno replied that she could not give the cigarettes for free. *Id.*

33.     After Moreno refused to provide Wimmer a pack of cigarettes without payment, Wimmer proceeded to move behind the counter Moreno was standing behind. *Id.*

34.     Moreno told Wimmer, "Don't come back here." *Id.*

35.     Once he was behind the counter, Wimmer extended his left arm to reach for a pack of cigarettes from the display case located behind Moreno, holding the knives (among other things) in his right arm. Hankins Decl. Exs. 4-6 at 6:56:06-6:56:25.

36.     After Wimmer began extending his arm, Moreno made physical contact with Wimmer. *Id.* at 6:56:12-16.

37.     Eventually, Moreno pushed Wimmer away from her. *Id.* at 6:56:06-6:56:25; Moreno Dep. 68:2-69:18.

38.     Moreno also grabbed one of Wimmer's arms. *Id.*

39.     Wimmer may or may not have actually taken anything off the shelf and then he left the store. *Id.*

40.     Wimmer did not verbally threaten Moreno. Moreno Dep. 69:19-70:3, 125:4-5.

41.     Wimmer did not threaten Moreno with the knife. Hankins Decl. ¶ 8 & Ex. 7 (911 call at 7:20-7:33); *see also* Moreno Dep. 71:5-72:3 (verifying that everything said on the call was true).

**E.**     **Moreno calls the police and her managers and they all come to the store.**

42.     After Wimmer left, the next thing Moreno did was call the police. Moreno Dep. 73:5-12.

43.     Police officers arrived at the store approximately five minutes after Moreno called them. *Id.* at 73:11-17.

44.     Moreno called Store Manager Love Jorgensen soon after she called the police. *Id.* at 74:8-16.

45.     Jorgensen advised Moreno that it would take her at least 45 minutes to get to the store and to call the assistant manager. *Id.* at 74:13-20, 75:15-20.

46.     Next, Moreno called and left a message for "Amanda," her assistant manager. *Id.* at 72:16-17, 74:12-25.

47.     After the police left the store, Moreno called Market Manager Driss Aamoud to advise him of the theft, and Aamoud arrived at the store soon after Moreno advised him of the theft, "within like five minutes." Moreno Dep. 76:17-25, 79:6-10.

48.     Aamoud arrived at the store at approximately 8:24 p.m. Hankins Decl. ¶ 11 & Ex. 10 ("Aamoud Dep.") 111:3-13.

49.     Aamoud proceeded to the back office of the store to review the surveillance video of the incident with Wimmer. Moreno Dep. 76:19-25.

50.     Jorgensen arrived at the store after Aamoud. Moreno Dep. 76:1-8.

51.     After Jorgensen arrived, Aamoud and Jorgensen reviewed the surveillance video together. Aamoud Dep. 113:15-18.

52.     At approximately 8:56 p.m., Aamoud asked Moreno to take the remainder of her shift that night off. Aamoud Dep. 121:2-6, 123:9-14.

**F.     Circle K reviews the incident and terminates Moreno's employment for violation of the Confront & Chase policy.**

53.     On October 5, 2020, Aamoud, Regional Operations Director Craig Holmes, and Human Resources Manager Amy Harvey each reviewed the surveillance video. Aamoud Dep. 117:20-25; Hankins Decl. ¶ 12 & Ex. 11 ("Holmes Dep.") 7:20-24, 41:12-16, 42:11-23, 43:2-44:13; Harvey Dep. 73:13-18.

54.     Aamoud, Holmes, and Harvey, all agreed that Moreno had violated Circle K's Confront & Chase policy by making physical contact with Wimmer. Holmes Dep. 42:11-23, 43:2-44:13, 49:17-50:5; Aamoud Dep. 131:10-17, 133:6-7, 133:13-16; Harvey Dep. 71:11-19, 72:6-9, 75:6-12.

55.     Aamoud, Holmes, and Harvey jointly and collaboratively decided to terminate Moreno's employment. Holmes Dep. 43:24-44:5; 30(b)(6) Dep. 12:18-23.

56.     Moreno's employment with Circle K was terminated for her violation of Circle K's Confront & Chase policy. Holmes Decl. ¶ 10; Ex. C, Decl. of Driss Aamoud ("Aamoud Decl.") ¶ 4; Ex. D, Decl. of Amy Harvey ("Harvey Decl.") ¶ 6.

57.     Moreno violated the Confront & Chase policy by engaging and pulling Wimmer from his back. Holmes Decl. ¶ 11; Aamoud Decl. ¶ 6; Harvey Decl. ¶ 7; Hankins Decl. ¶ 14 & Ex. 14 (View Terminate Employee Event); Aamoud Dep. 136:15-137:2 (authenticating Exhibit 14).

58.     Holmes, Aamoud, and Harvey considered whether Moreno had acted in self-defense and determined that she had not. Holmes Dep. 49:13-50:11.

59.     Holmes, Aamoud, and Harvey honestly believed that Moreno had not acted in self-defense. Holmes Decl. ¶ 13; Aamoud Decl. ¶ 7; Harvey Decl. ¶ 8.

60.     Moreno admits her employment was terminated because she pushed Wimmer. Moreno Dep. 109:14-20.

61.     Aamoud called Moreno on or about October 6 or 7, 2020 to convey Circle K's decision to terminate her employment. Moreno Dep. 57:16-58:16; Aamoud Dep. 139:2-6; Holmes Decl. ¶ 12.

62.     When Aamoud advised Moreno of Circle K's decision, he told Moreno she was terminated and neither Moreno nor Aamoud said anything else after that. Moreno Dep. 90:11-91:5, 92:8-93:5.

63.     Aamoud did not tell Moreno she should not have reported the theft to him. Moreno Dep. 94:21-23; Aamoud Decl. ¶ 8.

64.     Aamoud did not tell Moreno that she was being terminated because she engaged in self-defense. Moreno Dep. 111:2-25; Aamoud Decl. ¶ 9.

65.     The termination phone call is the last time Moreno spoke to Aamoud. Moreno Dep. at 93:6-8

66.     Moreno did not talk to anyone else at Circle K about the termination of her employment, her employment, or the robbery. *Id.* at 93:9-22.

67.     Neither Aamoud nor anyone else at Circle K told Moreno that she should not have called the police or cooperated with the police. Moreno Dep. 93:25-94:9.

68.     No one at Circle K told Moreno that she should not cooperate in the criminal case against Wimmer. Moreno Dep. 94:10-20.

69.     Moreno does not believe she was terminated for reporting the robbery or calling the police, and has no evidence she was terminated for reporting the robbery or calling the police. Moreno Dep. 109:21-110:3, 112:1-18.

70.     Moreno does not believe that she was fired because she was the victim of a crime, and that she does not have any evidence that she was fired because she was the victim of a crime. Moreno Dep. 110:4–12.[3]

71.     Moreno's employment was terminated for violation of the Confront & Chase policy, not because she engaged in self-defense, not because she reported the robbery, not because she called the police, and not because she was the victim of a crime. Holmes Decl. ¶ 14; Aamoud Decl. ¶ 10; Harvey Decl. ¶ 9.

### III. ARGUMENT

Circle K is entitled to judgment as a matter of law on both of Moreno's claims. Her wrongful-discharge claim fails because Colorado does not have a clearly established public policy in favor of self-defense and because there is no evidence that Moreno was terminated because she was a victim of a crime or due to her assistance in a criminal investigation. Moreno's

---

[3] In her errata sheet, Moreno substantively changed her responses to testify that she does believe she was fired for being a victim of a crime and that she did have evidence she was fired for being a victim of a crime. Moreno Dep. at Errata Sheet. Moreno explained the reason for her change was that she misunderstood the question being asked of her. *Id.* The Court should disregard these substantive changes to Moreno's deposition testimony. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 784-86 (10th Cir. 2021) (holding that substantive changes to deposition testimony were properly excluded); *cf.*, *Nyborg v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01918-RM-KLM, 2021 WL 5014498, at *3–4 (D. Colo. Oct. 28, 2021) (striking errata changes where the only reason provided was that the deponent misunderstood the question).

Even if the Court considers the errata testimony, Moreno's ***beliefs*** are not evidence of anything, and "[t]he way [she] was fired and what they said to [her]" does not create a genuine issue of fact that she was terminated because she was the victim of a crime.

IIED/outrageous-conduct claim fails because the undisputed material facts show that the circumstances of Moreno's termination are not extreme and outrageous as a matter of law.

## A.      Standard of review.

Summary judgment should be granted when, as here, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Circle K need not disprove Moreno's claims; rather, Circle K may simply point out a lack of evidence for Moreno on an essential element of any of her claims. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). Once Circle K meets this initial burden, the burden then shifts to Moreno to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Moreno cannot "rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## B.      Moreno's claim for wrongful discharge in violation of public policy fails.

Moreno alleges that her termination violates a clearly expressed public policy and therefore constitutes wrongful termination under Colorado common law. The claim fails because she had not identified a sufficient legal and factual basis to support it.

Under Colorado law, either an employer or an employee can terminate an at-will employment relationship. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 105 (Colo. 1992). The Colorado Supreme Court, however, has recognized a narrow public-policy exception to at-will employment, applying where an employee's termination stems from her exercising a job-related right. *See Charney v. United Airlines, Inc.*, No. 19-cv-01700-NYW, 2020 WL 6450445, at

*2 (D. Colo. Nov. 2, 2020) (citing *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 551-52 (Colo. 1997)). Wrongful discharge in violation of public policy is a narrow cause of action, and the Colorado Supreme Court has cautioned that "[n]ot all potential sources of public policy are of sufficient gravity to outweigh the precepts of at-will employment." *Crawford*, 938 P.2d at 553. It is Moreno's burden to establish that the public-policy exception applies. *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 243 (Colo. App. 2006), *as modified on denial of reh'g* (June 29, 2006). To warrant an exception to at-will employment, the statutory, constitutional, or other provision giving rise to the public policy must "be sufficiently concrete to notify employers and employees of the behavior it requires." *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 524 (Colo. 1996). Whether a statutory or constitutional provision qualifies as a clear expression of public policy is a matter for judicial determination. *See id.* at 524-25.

This Court analyzes wrongful discharge in violation of public policy under the *McDonnel-Douglas* framework. *See Charney*, 2020 WL 6450445, at *11-13.[4] In the first place, Moreno must make a prima facie showing that (1) she was employed by Circle K, (2) she was discharged, and (3) she was discharged for exercising a job-related right or privilege to which she was entitled. *Id.* at *2. Only the third element is at issue here, and it requires Moreno to "demonstrate a causal connection between her termination and her exercise of a job-related right." *Id.* If Moreno meets her prima facie burden, Circle K has the exceedingly light burden of articulating a legitimate reason for her termination—which is satisfied here: violation of the

---

[4] As in the *Charney* and *Donez* cases, Moreno's claims would also fail under the totality-of-evidence inquiry. *Charney*, 2020 WL 6450445, at *13 n.22; *Donez*, 2020 WL 1914958, at *5 n.4.

Confront & Chase policy. In that case the burden shifts back to Moreno to show pretext. *Id.* at *13.

Whether it is a failure of Moreno's prima facie case or a lack of pretext, her claim fails on the law and on the facts and summary judgment is appropriate.

### 1.   Self-defense is not a clearly expressed public policy sufficient to support a wrongful-discharge claim.

Moreno's first theory of recovery is that Circle K wrongfully terminated her in violation of her right to self-defense. But self-defense has never been recognized as supporting a wrongful-discharge claim in Colorado and—in fact—the only court to have considered it rejected the argument. This Court should reject the theory too.

Judge Arguello addressed the same argument in *Donez v. Leprino Foods,* 2020 WL 1914958, at *6-7. In *Donez*, the plaintiff cited two provisions of the Colorado Constitution as well as Colorado Revised Statutes § 18-1-704 as establishing a public policy in favor of self-defense sufficient to create an exception to at-will employment. *Id.* at *6 n.6. The court granted summary judgment on the claim for wrongful discharge in violation of public policy on the basis of self-defense because the sources of authority were insufficiently specific to create an exception to at-will employment. *Id.* at *7. In its reasoning, the court recognized the Colorado Supreme Court's repeated emphasis that the public-policy exception may only be applied if employers are on notice of the purported public policy. *Id.* at *7. And because the plaintiff had cited criminal statutes and broadly worded constitutional provisions, the court held there was not a clearly expressed public policy warranting a self-defense exception to at-will employment. *Id.* The *Donez* decision also held that the plaintiff failed to make the necessary connection between

the public policies in question and his employment, "as the generally applicable constitutional provisions and criminal law are, at best, tenuously connected to his employment. *Id.*

Here, Moreno's Amended Complaint references the ***same sources of law*** as the plaintiff in *Donez* in support of the existence of a self-defense public-policy exception to at-will employment—i.e., Colo. Const. art. II, § 3, Colo. Const. art. III, § 13, and Colo. Rev. Stat. § 18-1-704. *Compare id.* at *6 n.6, *with* Am. Compl. [Dkt. 56] ¶¶ 96–99. Because the Colorado Supreme Court has only narrowly applied the public-policy exception to at-will employment and because there is not a clearly established policy in favor of self-defense under Colorado law, the Court should join Judge Arguello's well-reasoned analysis in *Donez* and reject Moreno's theory.

> 2. **The undisputed facts show Moreno was NOT acting in self-defense and—at the very least—that is what the decisionmakers honestly believed.**

Moreno's claim also fails as a matter of fact as to her self-defense theory. There is no dispute that Wimmer did not threaten Moreno with a knife and he did not verbally threaten her. SUMF ¶¶ 40, 41. And the video evidence before the Court plainly shows that Moreno stepped toward Wimmer as he approached her, pushed Wimmer away from her, then grabbed his arm and pulled him toward her when he reached for cigarettes; she plainly had a handful of his shirt and tugged on him as he began to walk away. Hankins Decl. Exs. 4-6. Circle K's decisionmakers reviewed the video evidence, and consistent with what it depicted, determined that Moreno had not acted in self-defense. SUMF ¶¶ 53, 58. And the decisionmakers honestly believed she was not acting in self-defense. SUMF ¶ 59.

Therefore, even if the Court disagrees with the *Donez* decision and recognizes self-defense as a sufficient basis for a public-policy claim like Moreno's, Circle K is entitled to summary judgment because Moreno was not defending herself but rather confronting the robber

and attempting to stop him from stealing cigarettes, which is precisely what Circle K's policy lawfully prohibits. Moreover, Circle K's decisionmakers honestly believed that Moreno had violated the policy, which precludes Moreno from raising any genuine issue of fact about pretext. As the Court recognized in *Charney*, the question is not whether the decision is wise, fair, or correct, but rather if the decisionmakers subjectively but honestly believed Moreno had engaged in misconduct, even if they were mistaken. *See Charney*, 2020 WL 6450445, at *15-16 (discussing authority).

### 3. Moreno's victims'-rights theory fails as a matter of law and for lack of evidence.

As a separate basis for Moreno's wrongful-discharge claim, the Amended Complaint asserts that the claim is "is also simultaneously grounded in her rights as a victim and witness of a crime, including her rights to report a crime and to participate in the investigation and prosecution of the crime, free from retaliation by her employer or anyone else, in accordance with § 18-8-706, § 24-4.1-303, and other statutes, common law, and other sources of public policy as recognized by the courts." Am. Compl. ¶ 100.

This theory fails for two reasons. ***First***, the claim is barred as a matter of law because Colorado Revised Statutes § 24-4.1-303 provides a statutory remedy and the cited criminal statute does not produce an exception to at-will employment. Colorado law is clear that a wrongful-discharge claim is not available where the statute at issue provides a wrongful-discharge remedy. *Miles v. Martin Marietta Corp.*, 861 F. Supp. 73, 74 (D. Colo. 1994) (citing *Smith v. Colorado Interstate Gas Co.*, 777 F. Supp. 854, 858 (D. Colo. 1991)); *see also U.S. ex rel. Lovato v. Kindred Healthcare, Inc.*, No. 15-cv-02759-CMA-NYW, 2020 WL 9160872, at *23 (D. Colo. December 14, 2020), *report and recommendation adopted sub nom.*, *Colorado v.*

*Kindred Healthcare, Inc.*, No. 15-CV-02759-CMA, 2021 WL 1085423 (D. Colo. Mar. 22, 2021) (collecting cases). Relevant here, § 24-4.1-303(17) provides a remedy for violations of the statue Moreno relies on. Namely, anyone affected by a violation of § 24-4.1-303 may notify the Crime Victim Services Advisory Board, and if the Board determines the report has a basis in fact, the affected individual's report will ultimately be referred to the Colorado Attorney General, who will then be requested by the Governor to file suit to "enforce compliance." Colo. Rev. Stat. § 24-4.1-303(17). And, just as importantly, the statute explicitly says that a person "shall not be entitled to claim or to receive any damages or other financial redress for any failure to comply with this article." *Id.* Combined, Moreno's claim cannot be based on § 24-4.1-303.

Section 18-8-706 is insufficient too. That statute creates criminal liability for individuals who retaliate against a victim of a crime by threat, criminal harassment, or act of harm or injury. Colo. Rev. Stat. § 18-8-706(1). Just like the criminal statutes Moreno put forth in support of her self-defense theory, § 18-8-706 is insufficiently specific and too tenuously connected to employment to create an exception to at-will employment. *See Donez*, 2020 WL 1914958, at *7.

**Second**, on the facts, it is Moreno's burden to demonstrate a causal connection between her termination and any of these job-related rights. *Charney*, 2020 WL 6450445, at *2. Circle K is entitled to summary judgment for the additional reason that there is ***no evidence that Circle K terminated Moreno because she was the victim of a crime or because she reported the crime***. *See* SUMF ¶¶ 53-71.

## C.    Moreno's IIED/outrageous-conduct claim fails as a matter of law.

Circle K is entitled to summary judgment on Moreno's IIED/outrageous-conduct claim because the undisputed material facts do not meet the extremely high bar for extreme and

17

outrageous conduct and there is no evidence Circle K recklessly or intentionally caused her severe emotional distress.

### 1. Legal standards.

The elements of Moreno's claim are: (1) Circle K engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing Moreno severe emotional distress, and (3) causing Moreno severe emotional distress. *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 498 (Colo. App. 2003). The tort "is extremely limited" *Katz v. City of Aurora*, 85 F. Supp. 2d 1012, 1021 (D. Colo. 2000), and the level of outrageousness necessary to establish the first element is "extremely high." *Archer*, 70 P.3d at 499. Indeed, "only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community, will suffice." *Id.* Put differently, actionable conduct "must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir. 1988). The tort "contemplates an extreme level of independently ascertainable misconduct from which the ineluctable conclusion is the calculated or reckless infliction of severe mental suffering." *Katz*, 85 F. Supp. 2d at 1020 (cleaned up). Although the question of whether conduct is outrageous generally is for the jury, "it is first the responsibility of a court to determine whether reasonable persons could differ on the question." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999).

In the context of employment termination, it is well-settled that discharge from employment, without more, is not outrageous conduct. *Grandchamp*, 854 F.2d at 384. Therefore, the manner of discharge and the employer's conduct are critical to finding outrageous conduct.

*See Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1459 (D. Colo. 1995). A mere allegation that Moreno was "dismissed or demoted wrongfully, summarily, or in violation of the employer's policies and procedures fails to state a claim for outrageous conduct." *Id.* (citing authority).

**2.      The conduct surrounding Moreno's termination is not extreme and outrageous.**

While there are some cases that have found extreme and outrageous conduct in the context of employment termination, the facts here fall well short of the necessary threshold. For example, in *Archer v. Farmer Bros. Co.*, the defendant's vice president ordered the plaintiff's termination five days after the plaintiff suffered an apparent heart attack, of which the defendant was aware. 70 P.3d at 499. The employees tasked with terminating the plaintiff's employment entered the plaintiff's mother-in-law's home—uninvited—to find the plaintiff lying in bed half-naked and handed him termination papers. *Id.* at 499-500. The defendant did not inquire into the status of the plaintiff's health, evaluate the possible medical consequences of delivering the news while the plaintiff was recovering from a heart attack, or consider alternative means to deliver the news. *Id.* at 499. In fact, the plaintiff's doctor opined that the plaintiff's "health was in such a delicate condition that the termination incident could have triggered a fatal heart attack." *Id.* at 500. Accordingly, the court upheld the jury verdict, concluding that:

> a reasonable person could find that defendants' conduct—barging into a relative's home and, without any prior notice or other consideration, abruptly firing a twenty-two-year employee while he lay in bed, partially undressed, recuperating from what five days earlier had appeared to be a heart attack, and was, in any event, a serious heart condition—so far exceeded the bounds of decency as to be atrocious and utterly intolerable in a civilized community.

*Id.*

Similarly, in *Christen-Loper v. Bret's Electric, LLC*, 175 F. Supp. 3d 1213, 1216–18 (D. Colo. 2016), within the span of three months, the plaintiff was in a car accident requiring hospitalization, one of the plaintiff's family members threatened to kill themself, and the plaintiff experienced "an acute activation" of her bipolar disorder that required her to be placed on suicide watch. *Id.* at 1217. Despite being aware of these events and while plaintiff was still on suicide watch, her employer's attorney delivered a letter to the plaintiff's home informing her of her termination. *Id.* at 1218. The court denies the defendant's motion to dismiss, observing that "an average member of the community" could construe the defendant's actions "as an attempt to terminate plaintiff's employment when she was at her weakest and could not defend herself." *Id.* at 1226. *See also Kirk v. Smith*, 674 F. Supp. 803, 810 (D. Colo. 1987) (holding that defendant's conduct was sufficiently outrageous to survive summary judgment where supervisor defendant physically assaulted supervisor employee)); *Wing v. JMB Prop. Mgmt. Corp.*, 714 P.2d 916, 918 (Colo. App. 1987) (finding outrageous conduct where the plaintiff alleged that she was sexually assaulted and then ridiculed, threatened, humiliated, and fired after making complaints about the sexual assault).

Here, the undisputed facts fall well short of the extreme and outrageous conduct from *Archer*, *Christen-Loper*, *Kirk*, and *Wing*. Indeed, the facts here do not even equal the circumstances in which courts have held that an employer's conduct ***was not*** extreme and outrageous. For example, in *Coors Brewing Co. v. Floyd*, 978 P.2d 663 (Colo. 1999), the plaintiff alleged that he was employed by the defendant as an investigator to conduct surreptitious narcotics investigations of the defendant's other employees. *Id.* at 664. The plaintiff further alleged that the defendant was advised by its outside counsel that these investigations were

illegal and that defendant was laundering money to its outside counsel to "circumvent [its] internal policies and to conceal [its] disbursement of funds for the investigations." *Id.* Moreover, according to the plaintiff, the defendant later terminated the plaintiff to protect itself "from liability for [its] orchestration of the drug investigations and related money-laundering scheme." *Id.* at 666. Accepting as true that the defendant engaged in a criminal conspiracy regarding illegal drugs and money laundering and fired plaintiff to scapegoat him for those crimes, the Colorado Supreme Court held that no reasonable person could find that the defendant's actions rose to the high level of outrageousness required the caselaw. *Id.*

Similarly, in *Martensen v. Koch*, the plaintiff alleged that he had raised concerns over the legality of his employer's tax strategy. No. 13-cv-02411-REB-CBS, 2014 WL 3057172, at * 3 (D. Colo. July 7, 2014). After the defendant learned of the plaintiff's concerns, the defendant allegedly relocated the plaintiff from the United States to Singapore. *Id.* at *3. Shortly after the plaintiff was relocated to Singapore, the defendant required the plaintiff to attend a meeting at the defendant's ranch located in a remote part of Colorado. *Id.* at *4. At the defendant's ranch, the plaintiff asserted that he was subjected to several hours of interrogation related to the defendant's belief that the plaintiff was colluding with one of the defendant's competitors, and immediately after this interrogation, the plaintiff was provided termination papers and served with a lawsuit against him. *Id.* at *4. Plaintiff further claimed that immediately after being terminated, his personal belongings were searched, he was escorted by armed guards off the defendant's ranch, and flown home in the defendant's private jet against his will. *Id.* at *5. Nonetheless—despite all this—the court found that the defendant's conduct was ***not*** extreme or outrageous as a matter of law. *Id.* at *8.

In this case, Moreno alleged that Circle K engaged in extreme and outrageous conduct by: (1) terminating Moreno because she was the victim of multiple felonies in the workplace; (2) terminating her because she engaged in protected activity by defending herself from potentially severe bodily harm in the workplace; (3) terminating Moreno for reporting the robbery; (4) failing to come to her aid following the robbery or assign additional employees to the store; and (5) asking her daughter-in-law to leave the store. Am. Compl. ¶¶ 113–21.

Summary judgment is appropriate because Moreno cannot present ***any evidence*** that her employment with Circle K was terminated because she was the "victim of multiple felonies" or because she reported the theft committed by Wimmer to the police and to her supervisors. And, in fact, Moreno's managers did come to the store after she called them—with Aamoud arriving within five minutes of the call and Jorgensen coming despite being far away—and it was hardly extreme and outrageous for Aamoud to ask Moreno's daughter-in-law to leave the store after he arrived, consistent with Circle K's visitor policy. SUMF ¶¶ 15-17, 23-24, 44-45, 47-48, 50.

Moreover, the remainder of Moreno's allegations—even if taken as true—do not amount to conduct that a reasonable member of the community would consider atrocious, and utterly intolerable in a civilized community. Moreno was not terminated in the midst of a major health crisis or when she was otherwise at her most vulnerable, and Circle K did not physically or sexually assault Moreno. Instead, Circle K reviewed video evidence of the October 4, 2020 encounter, the decisionmakers considered if Moreno was acting in self-defense and honestly believed she was not, and Aamoud conveyed the termination decision over the phone in a short and unremarkable conversation. Moreno was aware of the Confront & Chase policy, she was aware that violations would result in immediate termination, and she simply believes she did not,

in fact, violate the policy. Moreno Dep. 110:22-23. But the Colorado Supreme Court has held that an employer's failure to follow its policies is ***not*** outrageous conduct. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350-51 (Colo. 1988). Again, actionable conduct "must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Grandchamp*, 854 F.2d at 383. The facts here simply do not rise to the necessary level to survive summary judgment.

       **3.**      **There is no evidence that Circle K recklessly or intentionally caused severe emotional distress.**

Likewise, Moreno there is no evidence that Circle K acted recklessly or with the intent to cause her severe emotional distress, which is also a necessary element of her claim, and therefore summary judgment is appropriate for that additional reason. *E.g.*, *Fisher v. Koopman*, No. 15-cv-0166-WJM-NYW, 2016 WL 8540859, at *10 (D. Colo. Aug. 1, 2016); *Chalepah v. Canon City*, No. 13-cv-02166-NYW-KLM, 2015 WL 5093200, at *10 (D. Colo. Aug. 31, 2015) (Wang, J.).

**D.**      **Circle K is entitled to summary judgment on punitive damages.**

If either of Moreno's claims survives summary judgment, summary judgment is appropriate on punitive damages. Moreno amended her complaint to add a claim for punitive damages under Colorado Revised Statutes § 13-21-102 on the basis of her self-defense and victims'-rights theories of wrongful discharge. *See generally* [Dkt. 49] 1, 8-14 (renewed motion).

A party may seek punitive damages under § 13-21-102 if the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct. Colo. Rev. Stat. § 13-21-102(1)(a). Moreno does not assert that Circle K acted with fraud or malice; instead, she avers that Circle K willfully and wantonly ignored her rights. *See* [Dkt. 49] 8-12. Willful and wanton

conduct is conduct that is "purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13-21-102(b).

When Circle K terminated Moreno's employment, the only authority on whether Colorado law recognizes a self-defense exception to at-will employment was *Donez*, which held that such an exception is not recognized. *Donez*, 2020 WL 1914958, at *6-7. Circle K cannot be liable for punitive damages where the underlying claim is premised on a theory that is novel or otherwise poorly recognized. *Cf. Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 527 (1999); *E.E.O.C. v. Flambeau, Inc.*, 846 F.3d 941 (7th Cir. 2017) (holding that employer was not liable for punitive damages because the underlying violation was novel theory of discrimination).[5]

Circle K is similarly entitled to summary judgment on the victims'-rights theory of liability and damages. Again, Moreno has not and cannot proffer any evidence that she was terminated for being a victim of a crime or for reporting a crime to her supervisors or to the police. Indeed, each of the decisionmakers to Moreno's termination have attested that Moreno was terminated for the ***sole reason*** that she violated Circle K's Confront & Chase policy and Moreno's allegations or subjective belief to the contrary are not enough. SUMF ¶¶ 53-71.

---

[5] While *Kolstad* addressed punitive damages under Title VII and *Flambeau* assessed punitive damages under the ADA, the statutory authority for punitive damages under both acts is the same. Under § 1981a(b)(1), punitive damages are available if a defendant discriminates "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). This standard is substantially similar to the willful-and-wanton standard under § 13-21-102.

## IV. CONCLUSION

Moreno asks this Court to expand two narrowly drawn causes of action in her favor—splitting with a previous decision in this District to recognize a brand-new basis of public-policy wrongful discharge, and expanding IIED well beyond what Colorado law considers extreme and outrageous in the context of employment. But the law simply does not stretch that far. Moreno was at-will employee, subject to Circle K's lawful policies about how it expects employees to behave during a robbery. She was terminated because she violated that policy and the undisputed material facts before the Court demonstrate that Circle K is entitled to judgment as a matter of law.

WHEREFORE, Circle K asks that the Court grant summary judgment to it on all of Moreno's claims.

Respectfully submitted this 7th day of August, 2023.

*s/ Thomas W. Carroll*
Thomas W. Carroll
Nicholas Hankins
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: tcarroll@littler.com
         nhankins@littler.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of August, 2023, I electronically filed the foregoing

**CIRCLE K'S MOTION FOR SUMMARY JUDGMENT** using the CM/ECF system, which

will send notification of such filing to the following:

Iris Halpern
Virginia Hill Butler
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street, Suite 100
Denver, CO  80205
Telephone: (303) 578-4400
Fax: (303) 578-4401
ih@rmlawyers.com
vb@rmlawyers.com

*Attorneys for Plaintiff*

*s/ Joanna Fox*
Joanna Fox, Legal Secretary

4866-2677-1518.13