IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:22-cv-02327-NYW-STV

MARY ANN MORENO,

       Plaintiff,

v.

CIRCLE K STORES, INC.,

       Defendants.

---

**REPLY IN SUPPORT OF CIRCLE K'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant Circle K Stores, Inc ("Circle K") replies to Plaintiff's response [Dkt. 72] ("Response") to Circle K's Motion for Summary Judgment [Dkt. 64] ("Motion").

## I. INTRODUCTION

One judge in this district has already held that there is not a self-defense exception to at-will employment under Colorado law and this Court should hold the same. Moreover, Moreno has not and cannot propound any evidence that she was terminated because she was a victim of a crime or because she reported a crime. And on the record before the Court, Circle K's conduct does not constitute outrageous conduct as a matter of law. Accordingly, the Court should grant Circle K's Motion.

## II. REPLY CONCERNING UNDISPUTED FACTS

Circle K stands by the Statement of Undisputed Material Facts in its Motion. First of all, the Court should not strike the declarations Circle K submitted in support of its Motion. Despite

the unsupported assertion in Moreno's Response (and unlike her errata sheet), Circle K's declarations ***do not*** contradict the declarants' deposition testimony and Moreno has not identified any contradiction or basis to strike them. It is proper for Circle K to support the Motion with declarations that do not contradict prior testimony. Fed. R. Civ. P. 56(c)(1)(A).[1]

As to specific facts, many of Moreno's responses raise immaterial factual issues or add immaterial caveats to Circle K's statement. *E.g.*, Resp. ¶¶ 6, 9, 11, 12, 33, 52, 64. Other responses are contradicted by the video evidence. *E.g.*, *id.* at ¶¶ 35-39. Moreover, several of Moreno's responses (*e.g.*, *id.* at ¶¶ 60, 69-70) rely exclusively on her substantive revisions to her deposition testimony, which should be disregarded for the reasons set forth in Circle K's Motion. Mot. 11 n.3. Where Moreno does attempt to raise issues of material fact, her responses are deficient. Circle K specifically addresses Moreno's responses as follows:

40-41. Moreno's denials do not meet the substance of Circle K's statements. Circle K cited Moreno's deposition testimony and 911 call to support its statements of fact, and whether Moreno felt threatened does not raise a genuine issue of fact as to whether Wimmer verbally threatened her or threatened her with the knife, which he did not.

56-57. Moreno's denials do not raise a genuine dispute of fact. Moreno does not have evidence that she was terminated for any reason other than violating Circle K's Confront and Chase policy. Further, Moreno's belief regarding the reason she was terminated does not create a

---

[1] The authority cited by Moreno, *Stuckens v. SAGE Dining Servs., Inc.*, No. 22-1171, 2023 WL 2945861, at *3 (10th Cir. Apr. 14, 2023), is inapposite. There, the court held that a declaration contradicting the declarant's prior deposition testimony was an impermissible attempt to create a sham fact issue to ***survive*** a motion for summary judgment, which is not the case here. *Id.*

fact issue. And finally, Moreno's assertion that she "was terminated for reporting a crime and acting in self-defense" is not supported by any citation to the evidence.

58. Moreno's denial does not raise a genuine dispute of fact. Circle K cited unrebutted testimony from Craig Holmes that the decisionmakers considered whether Moreno acted in self-defense and determined she had not. Amy Harvey testified that she may have considered self-defense but did not remember. Resp. Ex. 5 [Dkt. 72-5] at 77:24-78:12 (Harvey Dep.). Harvey's testimony is consistent with Circle K's statement and it remains undisputed that the decisionmakers considered whether Moreno acted in self-defense.

59. Moreno's denials with respect to trainings and the applicability of Circle K's Confront and Chase policy between states do not meet the substance of Circle K's statement. Moreno's denial with respect to Driss Aamoud's testimony does not raise a genuine dispute of fact. Aamoud's testimony is consistent with the Circle K's statement and it remains undisputed that the decisionmakers considered whether Moreno acted in self-defense. Resp. Ex. 6 [Dkt. 72-6] 141:5-17 (Aamoud Dep. 141:5-17).

71. Moreno's denial does not raise a genuine dispute of fact for the reasons set forth in ¶¶ 56, 58, and 59 above.

### III. RESPONSE CONCERNING ADDITIONAL DISPUTED FACTS

Moreno's additional 39 Additional Disputed Facts do not foreclose summary judgment as further described in the argument section below. As to the statements themselves, Circle K does not dispute Moreno's Statement of Additional Disputed Facts ¶¶ 1-5, 7-8, 12, 14, 18, 20, 22, 24, 26, 29-30, 32, 35, 37-38. Circle K specifically addresses the remainder as follows:

6. Admitted in part and denied in part. Circle K admits that Wimmer had two knives. Pl's Mot. Partial Summ. J. ("Moreno's MSJ") Ex. 4 [Dkt. 65-4] (Police Report, Moreno 000315). Wimmer had one five- to six-inch knife and another knife that was in plastic packaging. *Id.*

9. Admitted in part and denied in part because the statement is incomplete. Circle K admits that Aamoud, Moreno's Market Manager, said that it would have been a violation of Circle K policy to have given Wimmer a pack of cigarettes without him showing identification. Moreno's MSJ Ex. 7 [Dkt. 65-7] 154:15-155:16 (Aamoud Dep.).

10. Admitted in part and denied in part. Circle K admits that Wimmer began to leave the store, but the video-surveillance evidence does not reflect that Wimmer became visibly agitated. Mot. Exs. 4-6 [Dkts. 64-6 to 64-8] at 6:55:57-6:56:08.

11. Denied. The video-surveillance evidence does not reflect that Wimmer "abruptly changed directions" or "lurched" toward Moreno. *Id.* at 6:55:57-6:56:17.

13. Denied. Moreno approached Wimmer instead of stepping back, despite having approximately 10 feet of space behind her and away from the cigarettes. Circle K's Resp. Pl's Mot. Partial Summ. J. Ex. 2 [Dkt. 70-3] 70:16-71:5 (Aamoud Dep.); Circle K's Resp. Pl's Mot. Partial Summ. J. Ex. 3 [Dkt. 70-4] 70:19-20, 71:17-18, 71:24-25, 72:22-74:2 (Jorgensen Dep.); Moreno's MSJ Ex. 11 [Dkt. 64-13] 42:13-17, 50:1-5 (Holmes Dep.).

15. Admitted in part and denied in part. Wimmer continued to move toward Moreno and the cigarette case and he was within reaching distance, but the video-surveillance evidence shows that the knives were tucked under his right arm. Mot. Exs. 4-6 at 6:56:10-16.

16. Admitted in part and denied in part. Circle K admits the first sentence. Circle K denies the second sentence. Once Wimmer was behind the counter, Wimmer extended his left

arm to reach for a pack of cigarettes from the display case located behind Moreno, holding the knives (among other things) in his right arm. *Id.* at 6:56:06-6:56:25. After Wimmer began extending his arm, Moreno made physical contact with Wimmer. *Id.* at 6:56:12-16. Eventually, Moreno pushed Wimmer away from her. *Id.* at 6:56:06-6:56:25. Moreno also grabbed one of Wimmer's arms. *Id.*

17. Denied. The surveillance video evidence does not support that Moreno acted in self-defense. *Id.* at 6:54:34-6:56:25; *see also* Mot. 6-7 ¶¶ 26-41.

19. Admitted in part and denied in part. Circle K admits that a Circle K customer and Moreno called the police. Circle K denies that the Circle K customer witnessed the robbery. *Id.* at 6:54:55-6:56:20; Moreno's MSJ Ex. 7 [Dkt. 64-9] at 00:00-5:10.

21. Admitted in part and denied in part. Circle K denies the first sentence. The evidence does not support that Moreno called Aamoud because Jorgensen had not arrived at the store after an hour. Moreno's MSJ Ex. 3 [Dkt. 65-3] at 8:10:05-8:11:26 (Circle K Surveillance Video (Register 1)).

23. Admitted in part and denied in part. Circle K admits the first sentence. Circle K admits that Aamoud asked Moreno's daughter-in-law to leave the store, but denies that Aamoud forced Moreno's daughter-in-law to wait in her car "for hours." Moreno's daughter-in-law left the store at approximately 8:43 and Moreno left the store at approximately 8:55. *Id.* at 8:43:02-8:43:16, 8:55:04-8:55:14.

25. Admitted in part and denied in part. Circle K admits that before Circle K terminated Moreno, Aamoud believed that Moreno violated Circle K's "Don't Chase or Confront" policy. Circle K denies the implication that Aamoud concluded that Moreno violated

5

Circle K's "Don't Chase or Confront" policy immediately after he reviewed video footage of the robbery on October 4, 2020. Moreno's MSJ Ex. 7 [Dkt. 65-7] 68:1-18 (Aamoud Dep.).

27. Denied. Aamoud called Moreno on or about October 6 or 7, 2020 to convey Circle K's decision to terminate her employment. Mot. Ex. 9 at 57:16-58:16 (Moreno Dep.); Mot. Ex. 10 at 139:2-6 (Aamoud Dep.); Mot. Ex. A ¶ 12 (Holmes Decl.). On October 8, 2020, Moreno's termination was finalized in Circle K's internal records. Mot. Ex. 10 at 139:1-9 (Aamoud Dep.).

28. Admitted in part and denied in part. Circle K admits that the reason for Moreno's termination was her contact with Wimmer on October 4, 2020 and states that Moreno's employment was terminated for violation of the Confront & Chase policy, not because she engaged in self-defense, not because she reported the robbery, not because she called the police, and not because she was a victim of a crime. Mot. Ex. A ¶ 14 (Holmes Decl.); Mot. Ex. C ¶ 10 (Aamoud Decl.); Mot. Ex. D ¶ 9 (Harvey Decl.).

31. Denied. Circle K's 30(b)(6) witness, Sue Fernandez, testified that there were two individuals who made documented physical contact with a person in a Circle K store that were not terminated. Resp. Ex. 1 [Dkt. 72-1] 84:22-85:3, 86:5-19 (30(b)(6) Dep.).

33. Admitted in part and denied in part. Circle K admits the first sentence. Circle K admits that footage of the incident referenced in Paragraph 33 does not exist, but Circle K's 30(b)(6) witness testified as to the known details of the incident and confirmed that the incident took place. *Id.* at 87:3-25, 89:1-17.

34. Admitted in part and denied in part. Circle K admits the first sentence. Circle K denies the second sentence. Harvey testified that during her Circle K employment she did not

believe she ever disagreed with a termination of an employee who experienced an armed robbery. Resp. Ex. 5 [Dkt. 72-5] 21:7-15, 35:3-7 (Harvey Dep.). Harvey did not testify that she had no recollection of ever retaining an employee who made contact with an assailant. *Id.*

39. Admitted in part and denied in part. Circle K admits the first sentence. Circle K denies the remaining sentences because Moreno relies on the substantive changes to her deposition testimony in her errata sheet, which should be disregarded. Mot. 11 n.3.

## IV.    ARGUMENT

**A.    Any genuine issues of disputed fact are immaterial.**

Between Circle K's and Moreno's statements of fact, there are undoubtedly points in dispute, but they do not form a basis to deny Circle K's Motion. First, as discussed above, the purported fact issues Moreno raises oftentimes are not genuine or supported by the evidence. Second, even where a dispute is genuine—such as with Circle K's responses to Moreno's additional disputed facts above—the disputes are not material. The core issues before the Court are questions of law (such as self-defense as the basis for a wrongful-discharge claim and whether Circle K engaged in extreme and outrageous conduct) or questions of a *lack* of facts (such as Moreno's alleged termination for being the victim of a crime) and none of the disputed facts are essential to the proper disposition of the claims. In other words, the essential, material facts remain undisputed and summary judgment is appropriate.

**B.    There is no self-defense exception to at-will employment under Colorado law and Moreno did not act in self-defense.**

Moreno argues that the Colorado Supreme Court would likely adopt a self-defense exception to at-will employment because three other states' supreme courts have done so and

because the *Donez* case is distinguishable on the facts. As to *Donez*, Moreno's argument is beside the point. Circle K relies on that decision for the legal holding that self-defense is not sufficient to support a wrongful-discharge claim in Colorado, based on the exact same statutes and sources Moreno cites. Differences in the underlying facts are immaterial to that question of law.

The non-Colorado cases Moreno cites do not rescue her claim either. Just like in the *Donez* decision, Moreno has not articulated how those cases comport with the restrictive precedent **in Colorado**. *See Donez v. Leprino Foods, Inc.*, No. 19-CV-00285-CMA-NRN, 2020 WL 1914958, at *7 (D. Colo. Apr. 20, 2020).[2] Plus—in a reflection of the fact they are applying other states' laws—the cases Moreno cites are distinguishable on the law.

First, *Ray v. Wal-Mart Stores, Inc.*, 359 P.3d 614 (Utah 2015), is not persuasive as to Colorado law. Utah and Colorado employ entirely different tests to determine whether a public policy warrants an exception to at-will employment. Under Colorado law, the test is whether a public policy is "sufficiently concrete to notify employers and employees of the behavior it requires." *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 524 (Colo. 1996). Utah courts, in contrast, consider three factors:

> (1) whether the policy at issue is reflected in authoritative sources of state public policy, (2) whether the policy affects the public generally as opposed to the private interests of the employee and the employer, and (3) whether countervailing policies outweigh the policy at issue.

*Ray*, 359 P.3d at 620. Absent from Utah's test is any consideration of specificity and notice—both of which the *Donez* court found lacking as to the purported bases of public policy here.

---

[2] The *Donez* court specifically considered and found unpersuasive two of the three cases Moreno relies on: *Ray* and *Feliciano*. Resp. 16; *Donez*, 2020 WL 1914958, at *7.

Second, *Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713 (W. Va. 2001), is unpersuasive too. Notably, that court held that West Virginia's constitutional and legislative authority were insufficient to support a self-defense exception. *Id.* at 718-19. Instead, the *Feliciano* court relied on West Virginia's "jurisprudential history." *Id.* at 719-24. Sources of public policy under Colorado law, however, are principally derived from statutory and constitutional provisions, and only in "limited circumstances," do courts consider "other sources of public policy such as administrative regulations and professional ethical codes." *Mariani*, 916 P.2d at 525. Indeed, the Colorado Supreme Court has observed that "[t]he General Assembly is the branch of government charged with creating public policies, and the courts may only recognize and enforce such policies." *Crawford Rehabilitation Servs., Inc. v. Weisman*, 938 P.2d 540, 553 (Colo. 1997). In other words, Colorado is not West Virginia and public policy is not derived from the courts in Colorado.

Third, *Gardner v. Loomis Armored Inc.*, 913 P.2d 377, 379 (Wash. 1996), is entirely inapplicable to the question at issue here. The question the *Gardner* court answered was:

> Does it violate the public policy in the State of Washington to discharge an at-will employee for violating a company rule in order to go to the assistance of a citizen held hostage at the scene of a crime, and/or who is in danger of serious physical injury and/or death?

That is just not the issue here.

Moreover, in counterbalance to Moreno's cases—and demonstrating that it is each state's individual approach to this question that matters—several jurisdictions have declined to hold that there is a self-defense exception to at-will employment. *See, e.g.*, *Potts v. City of Devils Lake*, 953 N.W.2d 648, 653 (N.D. 2021) (declining to follow *Ray* and *Feliciano* and collecting cases);

9

*Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 312-13 (Md. Ct. Spec. App. 1995); *see also Hoven v. Walgreen Co.*, 751 F.3d 778, 782-87 (6th Cir. 2014) (applying Michigan law).[3]

Additionally, Circle K reiterates that the evidence shows Moreno was not, in fact, acting in self-defense. Contrary to Moreno's argument, Resp. 17, Circle K does not rely on its declarations for this point, but rather on the video evidence showing her aggressive actions toward Wimmer (grabbing his shirt and tugging him toward her for example), and Moreno's testimony that she was not verbally threatened or threatened with a knife. Mot. 6-7 ¶¶ 26-41.

**C.     Moreno's victims'-rights theory fails as a matter of law and for lack of evidence.**

Moreno did not address Circle K's argument that there is not a public-policy exception at-will employment based on victims'-rights. *See* Mot. 17 (arguing that Colorado Revised Statutes § 18-8-706 is "too tenuously connected to employment to create an exception to at-will employment"); *see also* Resp. 18. Nor does the Response overcome the clear legislative statement in § 24-4.1-303 that no one is entitled to damages or other financial redress for failure to comply with that article.

Moreover, there is no genuine issue of material fact that Moreno was *not* terminated for being a victim of a crime or for reporting that crime. The parts of the record on which Moreno relies *at most* establish that employees who make contact with individuals are terminated. *See* Resp. 9-11 ¶¶ 30-38, 18-19. This is completely distinct from evidence that Circle K ever

---

[3] The Court should decline to certify this question to the Colorado Supreme Court. "Federal courts have a duty to decide difficult or unsettled questions of state law and must do so if there is 'a reasonably clear and principled course.'" *France v. McLeish*, No. 21-cv-01736-MDB, 2022 WL 16924010, at *2 (D. Colo. Nov. 14, 2022) (quoting *Anderson Living Tr. v. Energen Res. Corp.*, 886 F.3d 826, 839 (10th Cir. 2018)). For the reasons set forth in the briefing, there is a reasonably clear and principled course for deciding this issue.

terminated any employee *because* the employee was a victim of a crime and even further away from evidence that Circle K terminated Moreno *because she* was a crime victim. This type of speculation is insufficient to survive summary judgment. *See Am Soc. of Home Inspectors, Inc. v. Int'l Assoc. of Certified Home Inspectors*, 36 F.4th 1238, 1243-44 (10th Cir. 2022).

**D.     Moreno's IIED/outrageous-conduct claim fails as a matter of law.**

Circle K stands by the arguments made in its Motion, as Moreno relies almost exclusively on the same caselaw. *See* Mot. 17-23; Resp. 21-23. As described in the Motion and as a matter of law, the conduct in this case falls short of cases finding extreme and outrageous conduct and it even falls short of the cases that found *no* extreme and outrageous conduct. The bar for this claim is extremely high and Moreno does not meet it.

One point from the Response bears mention. Moreno asserts that *Martensen v. Koch*, No. 13-cv-02411-REB-CBS, 2014 WL 3057172, at *3 (D. Colo. July 7, 2014), did not concern the termination of an employee after their physical safety was threatened. Resp. 23. But that's not true. In *Martensen*, the plaintiff alleged that the defendant invited him to the defendant's ranch located in a remote part of Colorado, where the defendant subjected the plaintiff to hours of interrogation, had the plaintiff searched, and had the plaintiff transported against his will—by guards the plaintiff believed were armed—in the defendant's private plane. 2014 WL 3057172, at *4.

*Martensen* is an example of a case falling short of extreme and outrageous conduct. If it was insufficient when the plaintiff was searched, interrogated, and basically held captive at a remote location, it cannot be extreme and outrageous to terminate Moreno's employment in accordance with a well-known and consistently enforced policy. Indeed, it is not enough even

11

when an employer fails to follow its own policies, Mot. 18-19, and it was not extreme and outrageous for Circle K to terminate Moreno's employment after she pushed and engaged the robber instead of allowing him to take the cigarettes.

### D. Circle K is entitled to summary judgment on punitive damages.

Moreno misstates and does not actually respond to Circle K's exemplary-damages argument with respect to Moreno's self-defense theory. Resp. 24. Circle K did not argue for summary judgment on exemplary damages because it was unaware of an existing self-defense exception to at-will employment. The Motion argued that Circle K cannot be liable for exemplary damages because Moreno's self-defense theory is novel or otherwise poorly recognized. Moreno did not respond to that argument and whether it was waived, conceded, or just right all along, summary judgment on punitive damages is warranted.

Respectfully submitted this 11th day of September, 2023.

*s/ Thomas W. Carroll*
Thomas W. Carroll
Nicholas Hankins
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: tcarroll@littler.com
           nhankins@littler.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of September, 2023, I electronically filed the foregoing **REPLY IN SUPPORT OF CIRCLE K'S MOTION FOR SUMMARY JUDGMENT** using the CM/ECF system, which will send notification of such filing to the following:

Iris Halpern
Virginia Hill Butler
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street, Suite 100
Denver, CO  80205
Telephone: (303) 578-4400
Fax: (303) 578-4401
ih@rmlawyers.com
vb@rmlawyers.com

*Attorneys for Plaintiff*

*s/ Patricia Perez*
Patricia Perez