**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-02327-NYW-STV

MARY ANN MORENO,

    Plaintiff,

v.

CIRCLE K STORES, INC.,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

    Plaintiff Mary Ann Moreno ("Plaintiff" or "Ms. Moreno") was terminated from her employment with Circle K. Stores, Inc. ("Defendant" or "Circle K") after she confronted an armed robber during one of her shifts.  *See, e.g.*, [Doc. 56 at ¶¶ 20–42, 73].  She sued Circle K for wrongful termination and intentional infliction of emotional distress ("IIED"), arguing that she was terminated for exercising self-defense against the robber and that her termination violated Colorado public policy.  [*Id.* at ¶¶ 90–124]; *see also* [Doc. 72 at 11–12]; *Kearl v. Portage Env't, Inc.*, 205 P.3d 496, 498–99 (Colo. App. 2008) ("[A]t-will employees [may] pursue claims for wrongful discharge if they allege that they were discharged because they engaged in conduct that is protected or encouraged as a matter of public policy.").

    Circle K eventually moved for summary judgment on both of Ms. Moreno's claims. Relevant here, it argued that Ms. Moreno's wrongful termination claim must fail because (1) Colorado law does not recognize a self-defense public policy exception to the at-will

employment doctrine, [Doc. 64 at 12–15]; (2) she was not acting in self-defense, [*id.* at 15–16]; and (3) Circle K's decisionmakers did not fire her for engaging in self-defense, [*id.* at 16]. In response, Ms. Moreno argued that (1) this Court should recognize a public policy exception to the at-will employment doctrine for employees terminated for actions taken in self-defense, [Doc. 72 at 11–17]; and (2) Ms. Moreno was acting in self-defense when she confronted the robber and was fired for that reason, [*id.* at 17].

With respect to the wrongful termination claim, the Court granted Defendant's Motion for Summary Judgment after declining to recognize in the first instance "a new type of public-policy exception to Colorado's at-will employment doctrine." [Doc. 83 at 13]. The Court concluded that Plaintiff "ha[d] not met her burden of demonstrating that a public-policy exception to the at-will employment doctrine applies, so as to overcome the presumption of at-will employment in Colorado." [*Id.* at 14];[1] *see also Moreno v. Circle K Stores, Inc.*, 713 F. Supp. 3d 1069, 1074 (D. Colo. 2024), *vacated and remanded*, No. 24-1058, 2024 WL 5252337 (10th Cir. Dec. 31, 2024). Plaintiff appealed. *See* [Doc. 86].

On December 31, 2024, the Tenth Circuit vacated this Court's order and remanded the case for further proceedings. *See Moreno*, 2024 WL 5252337, at *5. Specifically, the Tenth Circuit framed the case as presenting three potentially "dispositive issues":

---

[1] Defendant also moved for summary judgment on Plaintiff's IIED claim, [Doc. 64 at 17–23], and further argued that if the Court denied summary judgment on Plaintiff's substantive claims, it was still entitled to judgment in its favor insofar as Plaintiff seeks punitive damages, [*id.* at 23–24]. The Court granted summary judgment in Defendant's favor on Plaintiff's IIED claim and did not substantively discuss the punitive damages issue. [Doc. 83 at 19–28]. In addition, Plaintiff also moved for partial summary judgment on Defendant's affirmative defense of failure to mitigate. [Doc. 65 at 1]. The Court denied that motion as moot when it granted Defendant's Motion for Summary Judgment. [Doc. 83 at 28–29]. These portions of the Court's January 19, 2024 Order are not relevant to the issues presently before the Court, and the Court does not address them here.

"(1) whether Moreno used self-defense, (2) whether Circle K fired her for using self-defense, and (3) whether self-defense could support a wrongful-discharge claim under Colorado's public-policy exception to the at-will employment doctrine." *Id.* at *4. The Tenth Circuit directed this Court on remand to focus on the first two issues and ascertain whether either of those issues would be dispositive of the case before addressing the third issue, which presents a novel question of state law. *Id.* at *4–5. The Tenth Circuit declined to address the public policy question without a ruling from this Court as to whether genuine issues of material fact precluded judgment on either of the first two issues. *Id.* at *5. The Tenth Circuit simultaneously denied Ms. Moreno's motion to certify the question to the Colorado Supreme Court. *Id.*

On remand, the Court held a Status Conference with the Parties to discuss the appropriate next steps in this case. [Doc. 97]. The Court reinstated Defendant's Motion for Summary Judgment and declined to permit additional summary judgment briefing. [*Id.*]. The Court also permitted Ms. Moreno to formally move to certify the unsettled question to the Colorado Supreme Court. [*Id.*]. Plaintiff filed her Opposed Motion to Certify Question to Colorado Supreme Court (the "Motion to Certify") on February 14, 2025, [Doc. 98], and the Motion to Certify is now fully briefed, [Doc. 99; Doc. 100]. The Court first addresses the two fact-based issues identified by the Tenth Circuit before turning to the Motion to Certify.

I.    **Motion for Summary Judgment**

   A.    **Legal Standards**

Under Rule 56 of the Federal Rule of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact

3

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted).

A movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once this movant has met this burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). The Court views "the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1052 (10th Cir. 2023) (quotation omitted).

B.   **Undisputed Material Facts**

Ms. Moreno worked as an at-will employee for Circle K from October 2004 until October 2020. [Doc. 64 at ¶¶ 3–4, 61; Doc. 72 at 2, 6; Doc. 64-1 at ¶¶ 9, 12; Doc. 64-10 at 99:10–12].[2] Circle K maintains a "Confront & Chase Policy" that instructs employees,

---

[2] When citing to transcripts, the Court cites to the page and line numbers appearing on the original transcript. In all other instances, the Court cites to the page numbers generated by the CM/ECF system.

4

in pertinent part: "Do not confront follow, pursue, track, chase, fight or follow [inside and/or outside] any person[s] suspected of shoplifting products and/or cash from the site, beer runs or any other confrontational situation." [Doc. 64 at ¶ 6; Doc. 72 at 2; Doc. 64-5 at 2 (brackets in original)]. It also states that the "failure to follow" the Policy "will result in immediate termination." [Doc. 64 at ¶ 6; Doc. 72 at 2; Doc. 64-5 at 2 (emphasis omitted)].

On October 4, 2020, during Ms. Moreno's shift, an armed robber entered a Circle K store holding two knives. [Doc. 64 at ¶¶ 27, 28; Doc. 72 at 3; Doc. 64-11 at 60:10–24, 66:22–67:1]. The robber approached the cashier counter and asked for a pack of cigarettes, which Ms. Moreno retrieved; he then asked to have the cigarettes for free, and Ms. Moreno declined. [Doc. 64 at ¶¶ 30–32; Doc. 72 at 3; Doc. 64-11 at 68:2–20]. Thereafter, the robber moved behind the counter, and Ms. Moreno and the robber made physical contact. [Doc. 64 at ¶¶ 33–38; Doc. 72 at 3–4; Doc. 64-6 at 6:56:05–20].[3] Ms. Moreno's employment was terminated on October 6 or 7, 2020. [Doc. 64 at ¶ 61; Doc. 72 at 6; Doc. 64-11 at 58:2–16; Doc. 64-1 at ¶ 12].

Ms. Moreno claims she was terminated for acting in self-defense, *see* [Doc. 56 at ¶¶ 91, 94, 102, 107; Doc. 72 at 4–6], but Circle K claims she was terminated for violating the Confront & Chase Policy, *see* [Doc. 64 at ¶ 71].

### C.     Whether Ms. Moreno Acted in Self-Defense

Defendant argues that it is entitled to summary judgment on Ms. Moreno's wrongful termination claim because even if there were a recognized public policy exception to the at-will employment doctrine for use of self-defense, it is undisputed that Ms. Moreno was

---

[3] The Parties provide largely different views of the robbery events, which the Court discusses below.

5

not acting in self-defense when she confronted the robber. [Doc. 64 at 15]. It bases this argument on its position that the robber "did not threaten [Ms.] Moreno with a knife and he did not verbally threaten her" and that the video evidence shows that Ms. Moreno "stepped toward" the robber, pushed him away from her, "grabbed his arm and pulled him toward her when he reached for cigarettes," and then grabbed "a handful of his shirt and tugged on him as he began to walk away." [*Id.*].

Ms. Moreno disagrees, arguing that whether she acted in self-defense "is a quintessential factual dispute that must be resolved by the jury." [Doc. 72 at 17]. Indeed, Ms. Moreno disputes Circle K's description of the video evidence. She asserts that the robber was the aggressor, as he moved toward her behind the counter "while holding two knives." [*Id.* at 4]. She states that she "put her hands in front of herself to protect herself" as the robber "continued to push towards" her. [*Id.* at 3–4]. She also submits evidence of her subjective state of mind during the robbery; a couple hours after the robbery, when explaining the sequence of events and her actions, she told Driss Aamoud, Circle K's then-Market Manager, "I thought he was gonna stab me, I didn't know!" [Doc. 65-3 at 8:39:50–8:40:40]; *see also* [Doc. 64-16 at ¶ 3]. She also cites her deposition testimony, wherein she repeatedly states that she was fearful and acted in self-defense during the robbery. *See* [Doc. 72-4 at 111:13–16 ("I was defending myself. . . . Somebody comes at you, you're going to react."); *id.* at 124:9–18 ("I felt my life [was] in danger. I was afraid for my life. . . . [W]hat was I supposed to do? Fight for my life. I wasn't going to let him attack me.").

6

Plaintiff contends, and Defendant does not dispute, that Colo. Rev. Stat. § 18-1-704 sets forth the contours of the right to self-defense. *Compare* [Doc. 72], *with* [Doc. 79]. That statute, subject to certain exceptions not applicable here, provides that:

> [A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

Colo. Rev. Stat. § 18-1-704.

Video surveillance footage of the encounter does not "utterly discredit" Ms. Moreno's version of the events or that she engaged with the robber in self-defense. *See Ross v. Burlington N. & Santa Fe Ry. Co.*, 528 F. App'x 960, 965 (10th Cir. 2013) (explaining that if parties present conflicting evidence at the summary judgment stage, a court may rely on video footage to grant summary judgment if the video "utterly discredit[s]" the nonmovant's version of the facts (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007))). The video footage and its accompanying audio are far from a picture of clarity, but the footage depicts that the robber—who the Parties agree held two knives, *see* [Doc. 64 at ¶ 28; Doc. 72 at 3]—repeatedly asked Ms. Moreno to give him free cigarettes, [Doc. 64-6 at 6:55:18–6:56:05]. Ms. Moreno declined, and after an ensuing conversation, the robber started to come behind the counter; Ms. Moreno warned him twice "don't come back here." [*Id.* at 6:55:40–6:56:12]. He ignored her directives. [*Id.* at 6:56:10–12]. Ms. Moreno put her hands up in the robber's direction, and as he attempted to take cigarettes off the shelf, she grabbed his left arm and appeared to try to pull him back. [*Id.* at 6:56:12–6:56:16]. The robber was not deterred, and Ms. Moreno said she would call the police. [*Id.* at 6:56:16–6:56:20].

7

When the parties present different versions of events and support their positions with conflicting evidence, it is up to the jury, not the Court, to review the evidence and draw conclusions from that evidence. *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944) ("It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts."). A reasonable jury could conclude that Ms. Moreno acted in self-defense when she made contact with the knife-wielding robber who ignored her directives to stay out from behind the counter. Apart from the interpretation of the video evidence, the jury will also be responsible for determining the credibility of Ms. Moreno's account of the interaction. Summary judgment in Defendant's favor is thus not appropriate on this basis.

### D.     Whether Ms. Moreno Was Fired for Acting in Self-Defense

In the alternative, Circle K argues that, "at the very least," no reasonable jury could conclude that Ms. Moreno was terminated because she acted in self-defense, such that her wrongful termination claim must fail. [Doc. 64 at 15]. It is undisputed that Mr. Aamoud, Craig Holmes (Circle K's Regional Operations Director), and Amy Harvey (Circle K's then-Human Resources Manager) jointly decided to terminate Ms. Moreno's employment. [Doc. 64 at ¶ 55; Doc. 72 at 4; Doc. 64-1 at ¶ 7; Doc. 64-13 at 43:24–44:5; Doc. 64-17 at ¶ 4]. The Parties dispute, however, the actual basis for the termination decision. Defendant argues that its decisionmakers "honestly believed [Ms. Moreno] was not acting in self-defense" and terminated Ms. Moreno because they "honestly believed that [she] had violated" the Confront & Chase Policy. [Doc. 64 at 15–16]. Ms. Moreno

8

disputes that she was fired for a Policy violation; her position is that she was fired because she acted in self-defense. [Doc. 72 at 6].

As a preliminary manner, the Court is not persuaded that Defendant's framing of the issue is a correct one. Circle K seems to suggest that because—in its decisionmakers' honest view—Ms. Moreno's actions violated a workplace policy, then Circle K could not have acted wrongfully in terminating her employment. *See* [Doc. 64 at 15–16]. While the Court agrees generally that courts cannot second-guess employment decisions, *Widder v. Durango Sch. Dist. No. 9-R*, 85 P.3d 518, 526 (Colo. 2004), Defendant's argument that it terminated Ms. Moreno for violating the Confront & Chase Policy, *not* for acting in self-defense, makes a distinction without a difference. If an employee who confronts an armed robber *solely in self-defense* is deemed to have violated the Confront & Chase Policy and is therefore terminated, then that employee was, in effect, terminated for acting in self-defense. And if there is, as Plaintiff argues, a public-policy exception to the at-will employment doctrine based on the exercise of self-defense, an employer cannot insulate itself from liability by falling back on its workplace policies.[4]

---

[4] For a more straightforward analogy, suppose an employer had a workplace policy prohibiting its employees from serving on a jury and terminated an employee for attending her court-ordered jury service. The employer surely would not be permitted to avoid liability on the employee's subsequent wrongful termination claim by simply stating that the employee was terminated for violating a workplace policy. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992) (recognizing a wrongful termination claim "because of the employee's performance of an important public obligation," like jury duty). The purpose of the public-policy exception to at-will employment is to "to prohibit an employer from placing an employee in the position of keeping a job only by performing an illegal act, [forsaking] a public duty, or foregoing a job-related right or privilege." *Id.*

9

Moreover, genuine disputes of fact preclude summary judgment on this issue. For example, Defendant directs the Court to the declarations of Mr. Aamoud, Mr. Holmes, and Ms. Harvey, who each declared that Ms. Moreno was terminated for violating the Confront & Chase Policy, not for acting in self-defense, and that they each "honestly believe" that Ms. Moreno did not act in self-defense. [Doc. 64-1 at ¶¶ 10, 13–14; Doc. 64-16 at ¶¶ 4, 7, 10; Doc. 64-17 at ¶¶ 6, 8–9]. As explained above, the Court does not find the decisionmakers' explanations dispositive of the issue. Moreover, both Mr. Aamoud and Ms. Harvey stated in their depositions that they could not remember whether self-defense was discussed during the termination discussions. [Doc. 72-6 at 141:5–17; Doc. 72-5 at 77:24–78:7]. And in Defendant's Rule 30(b)(6) deposition, Defendant's representative agreed that the "only reason for [Ms. Moreno's] termination" was her "contact with the assailant on October 4th," [Doc. 72-1 at 98:23–99:3], and a reasonable inference could be drawn from this statement that Ms. Moreno was terminated due to her physical contact with the robber, not any policy violation. Finally, there is evidence Ms. Moreno told Mr. Aamoud that she acted in self-defense prior to her termination. *See* [Doc. 72-4 at 56:2–21; Doc. 65-3 at 8:39:50–8:40:40]; *see also Mowry v. United Parcel Serv., Inc.*, 280 F. App'x 702, 710 (10th Cir. 2008) (to succeed on a claim for wrongful termination, the plaintiff must show that "the employer was aware or should have been aware of the protected action prior to its decision to terminate the employee" (citing *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 110 (Colo. 1992))).

At summary judgment, the Court does not weigh evidence and views the record in the light most favorable to the nonmoving party. *Fogarty*, 523 F.3d at 1165; *Forth*, 85 F.4th at 1052. If a jury were to conclude that Ms. Moreno's contact with the robber was

10

carried out in self-defense (and assuming the public-policy exception advanced by Plaintiff exists), then a reasonable jury could conclude that Ms. Moreno was terminated for acting in self-defense. Accordingly, summary judgment is not appropriate on this basis.

The Court has now addressed the two fact-based issues highlighted by the Tenth Circuit and has concluded that summary judgment is not warranted on either basis. That leaves the remaining legal issue—whether there is a cognizable exception to Colorado's at-will employment doctrine based on the exercise of self-defense. Prior to answering this question, though, the Court finds it appropriate to turn to Plaintiff's Motion to Certify.[5]

## II. The Motion to Certify

Ms. Moreno asks the Court to certify the following question to the Colorado Supreme Court: "Is the right to self-defense against an unprovoked physical assault a public policy exception to the at-will employment doctrine that provides the basis for a wrongful discharge action?" *See* [Doc. 98 at 1].

### A. Legal Standards

Rule 21.1 of the Colorado Rules of Appellate Procedure provides:

> The supreme court may answer questions of law certified to it by . . . a United States District Court . . . when requested by the certifying court, if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court that there is no controlling precedent in the decisions of the supreme court.

---

[5] In the Court's January 19, 2024 Order, the Court declined to certify the question because Plaintiff had not formally moved for certification nor had she addressed the issue in any robust manner. *See* [Doc. 83 at 13 n.6]. She now has, and the Court finds it appropriate to address the propriety of certification before readdressing the unsettled legal question presented in the Parties' briefs.

11

Colo. App. R. 21.1(a). A federal court has discretion whether to certify a question to the Colorado Supreme Court, *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988), but the decision whether to *accept* another court's certified question also rests within the sound discretion of the Colorado Supreme Court, *Godinez v. Williams*, 544 P.3d 1233, 1237 (Colo. 2024).

The aim of certification is to save time and judicial resources and to "build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Certification may be appropriate if an unsettled state-law question (1) may be determinative of the case at hand and (2) is sufficiently novel that the certifying court "feel[s] uncomfortable attempting to decide it without further guidance." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).

However, "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo*, 843 F.2d at 407. Federal courts have a duty "to decide difficult or unsettled questions of state law and will do so if there is a 'reasonably clear and principled course.'" *Ratcliff v. Good Times Rests., Inc.*, No. 19-cv-00077-LTB-MEH, 2019 WL 2774217, at *2 (D. Colo. July 2, 2019) (quoting *Anderson Living Tr. v. Energen Res. Corp.*, 886 F.3d 826, 839 (10th Cir. 2018)); *see also Pino*, 507 F.3d at 1236 ("Under our own federal jurisprudence, we will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks.").

B.  **Analysis**

Ms. Moreno asks the Court to certify the question to the Colorado Supreme Court because (1) the question is determinative of Ms. Moreno's claim; [Doc. 98 at 3–7]; (2) the

12

question to be settled is a novel one involving unsettled state law, [*id.* at 7–10]; and (3) the question to be certified is important and could impact thousands of retail workers in Colorado, [*id.* at 10–12].  Circle K responds that certification is not appropriate because (1) the Motion to Certify is premature, [Doc. 99 at 5]; (2) the Court need not answer the unsettled question to grant summary judgment in Defendant's favor on a factual basis, [*id.* at 5–8]; (3) the Colorado Supreme Court has articulated a "clear and principled course" to decide the unsettled question, so certification is not necessary, [*id.* at 9–12]; (4) the Tenth Circuit has declined to certify similar questions to state high courts, [*id.* at 12–13]; and (5) the importance of the question to be answered is not a relevant consideration in determining whether to certify, [*id.* at 13].  The Court's above analysis has disposed of Defendant's first two arguments, and so the Court focuses on its others.

After careful consideration, the Court finds it appropriate to certify the unsettled question in this case to the Colorado Supreme Court.

First, resolution of the question may be, and likely is, determinative of this action.[6] *Pino*, 507 F.3d at 1236.  In this Order, the Court has concluded that genuine issues of material fact preclude summary judgment in Defendant's favor on the two "potentially dispositive" fact-based issues identified by the Tenth Circuit.  See *Moreno*, 2024 WL 5252337, at *1.  That leaves the third potentially dispositive question—whether a self-defense public-policy exception exists in Colorado.  If the answer is no, then the Court will likely grant summary judgment in Defendant's favor on Plaintiff's wrongful termination

---

[6] As explained below, the Court declines to revisit Ms. Moreno's IIED claim at this juncture.  If the Colorado Supreme Court answers the question presented here, its ultimate decision may have some impact on the Court's prior analysis on the IIED claim.  The Court recognizes, however, that the two claims are distinct, and it is likely that the question will be determinative of the entire action.

claim.  If the answer is yes, then Ms. Moreno's wrongful termination claim must go to a jury for fact-finding and resolution.  This weighs in favor of certification.  Colo. App. R. 21.1(a).

Second, the issue presents a novel question of important state public policy that is most appropriately answered with further guidance from Colorado's high court.  In making this determination, the Court emphasizes that it does not elect to certify the question simply because the answer is unclear.  The Court recognizes its obligation to answer unsettled questions of state law, *Anderson*, 886 F.3d at 839, and in fact attempted to do so in its original summary judgment order, [Doc. 83 at 7–14].  But in that order, the Court recognized the limitations of a federal court speaking on state public policy:

> "[T]he [Colorado] General Assembly is the branch of government charged with creating public policies, and the courts may only recognize and enforce such policies."  [*Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 553 (Colo. 1997)].  This is particularly true when *federal* courts are asked to recognize a new facet of state law, as it is not the federal judiciary's role to "define the parameters of state public policy."  *Brown v. Premier Roofing, LLC*, 173 F. Supp. 3d 1181, 1186 (D. Colo. 2016) . . . .  This Court is simply not in the position to recognize, in the first instance, a new type of public-policy exception to Colorado's at-will employment doctrine.

[Doc. 83 at 12–13 (second alteration in original)].

This is not a case where, for example, a federal court is asked to interpret a state statute as a matter of first impression; while such a task can be challenging, it is not particularly uncommon.  Here, Ms. Moreno asks for judicial recognition of a public-policy exception to Colorado's at-will employment doctrine.  Federal courts must "seek to give meaning and respect to the federal character of our judicial system," and "the judicial policy of a state should be decided when possible by state, not federal, courts."  *Pino*, 507 at 1236; *see also Delaney v. Cade*, 986 F.2d 387, 391 (10th Cir. 1993) (certifying

14

question "[c]onsistent with [the] judicial policy that matters of state law should first be decided by state courts"). Moreover, the Court notes that Plaintiff did originally file this case in state court, *see* [Doc. 3], and if the case had stayed there, this question may very well have made its way up to the Colorado Supreme Court. But because Defendant removed the case to federal court, there is no opportunity for the Colorado Supreme Court to answer this question absent certification (or an entirely new case raising the same issue).[7]

Finally, while Defendant argues that the relative importance of a state-law question is not a factor this Court should consider in its certification decision, [Doc. 99 at 13], the Court respectfully disagrees that the significance of the question presented is entirely irrelevant. "[C]ertification has a valuable role to play for important and novel questions of state legal policy." *Larrieu v. Best Buy Stores, L.P.*, 491 F. App'x 864, 865 (10th Cir. 2012). The Tenth Circuit has referenced the importance of an unanswered legal question in several of its certification decisions. *See, e.g.*, *id.* at 868 ("Not only does this case present a close question, it presents an important and novel one of state legal policy."); *Hamilton v. Amazon.com Servs. LLC*, No. 23-1082, 2024 WL 158760, at *1 (10th Cir. Jan. 12, 2024) ("Because Hamilton's position turns on an important and novel question of state regulatory interpretation that has the potential to significantly impact Colorado employers and employees, we respectfully certify this question to the Colorado Supreme Court."); *Amica Life Ins. Co. v. Wertz*, No. 18-1455, 2019 WL 8619598, at *2 (10th Cir. July 24,

---

[7] The Court does not in any way critique or criticize Defendant's decision to exercise its right to remove this case to federal court. The Court simply notes that this is not a case where the plaintiff elected to file the state-law case in federal court and subsequently asked the federal court to send a question to the state court.

15

2019) ("In light of the lack of precedent on point, and in furtherance of comity and federalism, we conclude the Colorado Supreme Court should have the opportunity to answer this important constitutional question in the first instance."). The importance or significance of the question goes directly to the issue of comity and does, in the Court's view, belong in the certification calculus. And given the potential gravity of the question presented, the Court is most comfortable resolving Defendant's Motion for Summary Judgment with further guidance from the Colorado Supreme Court. *Pino*, 507 F.3d at 1236.

Rule 21.1(c) states that a certification order must set forth (1) the question of law to be answered; and (2) "[a] statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose." Colo. App. R. 21.1(c). The Court respectfully requests that the Colorado Supreme Court certify and answer the following question: **Does Colorado law recognize a public-policy exception to the at-will employment doctrine that allows an employee to bring a wrongful termination claim in the event the employee is terminated for actions taken in self-defense?** The Court "recognize[s] the discretion of the Colorado Supreme Court to reformulate the question posed." *Amica Life Ins. Co.*, 2019 WL 8619598, at *2. In addition, the statement of the facts relevant to the certified question are presented above. *See supra* pages 4–5.

### III.   The Remainder of Defendant's Motion for Summary Judgment

Having decided to certify a question to the Colorado Supreme Court, a few issues potentially remain: (1) whether Defendant is entitled to summary judgment on Ms. Moreno's IIED claim; (2) whether Defendant is entitled to summary judgment with respect

16

to Plaintiff's request for punitive damages; and (3) whether Plaintiff is entitled to summary judgment on Defendant's affirmative defense of failure to mitigate.[8]  The Court declines at this juncture to revisit any of these issues or its prior analysis.  The Colorado Supreme Court's decision to take the certified question—and if it does certify the question, its ultimate resolution of the issue—may have an impact on the Court's analysis of these remaining issues.  The Court will address these issues, if necessary, in due course after the Colorado Supreme Court either accepts and answers, or declines to answer, the certified question.  Accordingly, the remainder of Defendant's Motion for Summary Judgment is **HELD IN ABEYANCE**.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Circle K's Motion for Summary Judgment [Doc. 64] is **DENIED in part** and **HELD IN ABEYANCE in part**;

(2) Plaintiff's Opposed Motion to Certify Question to Colorado Supreme Court [Doc. 98] is **GRANTED**;

(3) The Court certifies the following question to the Colorado Supreme Court: **Does Colorado law recognize a public-policy exception to the at-will employment doctrine that allows an employee to bring a wrongful termination claim in the event the employee is terminated for actions taken in self-defense?**;

---

[8] The Court has not reinstated Ms. Moreno's Motion for Partial Summary Judgment.  The Court will do so if necessary after the Colorado Supreme Court issues its certification decision.

(4) Pursuant to Rule 21.1(d) of the Colorado Rules of Appellate Procedure, the Clerk of Court shall forward this Order to the Colorado Supreme Court under the Clerk's official seal, and the Clerk shall, if and when requested by the Colorado Supreme Court, forward any portion of the record which the Colorado Supreme Court may request; and

(5) Within **60 days** of the date of this Order, and **every 60 days thereafter**, the Parties shall file a joint status report advising the Court of the status of the Colorado Supreme Court's consideration of this certification request and any related proceedings.

DATED: May 9, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge